UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LESLEE C.,

                          Plaintiff,

          v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                          Defendant.

CASE NO. C18-5406-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964.[1] She graduated high school and completed a dental assistant program through a vocational school. (AR 46.) Plaintiff previously worked as merchandise displayer, physical therapy aide, and receptionist. (AR 74.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed a DIB application on July 1, 2014 alleging disability beginning June 1, 2014. (AR 229-35.)   She is insured for DIB through June 30, 2016 and was required to establish disability on or prior to that "date last insured" (DLI).  *See* 20 C.F.R. §§ 404.131, 404.321. Plaintiff's application was denied initially and on reconsideration.

On November 9, 2016, ALJ Kelly Wilson held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 41-79.)  On April 25, 2017, the ALJ issued a decision finding plaintiff not disabled.  (AR 19-34.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on March 19, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity from the alleged onset date through the DLI.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found the following impairments severe:  fibromyalgia; degenerative disc disease of the cervical and lumbar spine; affective disorder; anxiety disorder; and alcohol dependence.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following exceptions: frequently stoop, kneel, crouch, crawl, and climb; avoid concentrated exposure to vibrations; perform simple and detailed tasks; and adapt to occasional changes in work setting. With that assessment, and with the assistance of the VE, the ALJ found plaintiff able to perform her past relevant work as a receptionist.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work existing in significant levels in the national economy. With the VE's assistance, the ALJ also found plaintiff capable of performing other jobs, such as work as a storage facility rental clerk, office helper, and production assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly evaluate the opinions of her treating providers, erred in evaluating her RFC, and erred in determining she could perform her past relevant work.

She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

### RFC and Related Findings

Plaintiff avers error in the ALJ's evaluation of her RFC, and raises several related arguments. For the reasons set forth below, the Court concludes the ALJ erred in considering plaintiff's symptom testimony, potentially implicating the RFC determination and other aspects of the ALJ's decision.

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. (AR 25-30.) She found the generally unremarkable imaging studies, minimal treatment received, and evidence showing ambulation with a normal gait and full range of motion, strength, and reflexes in the extremities to support the conclusion plaintiff could perform limited light level work activity, with the inclusion of postural and environmental restrictions. (AR 28.) She also

found the evidence to show plaintiff could perform work activity despite her mental health conditions. Plaintiff had minimal mental health treatment, and her symptoms significantly improved when she started taking Paxil. A consultative psychological examination revealed generally unremarkable concentration, memory, fund of knowledge, abstract reasoning, insight, and judgment, and supported a finding plaintiff could sustain simple and detailed tasks, with only occasional changes in the work setting. (AR 28-29.)

In addition to the minimal treatment received for fibromyalgia and her back, plaintiff failed to follow-through with physical therapy and received minimal chiropractic care even though it improved her symptoms, and acknowledged she did not receive any medical treatment while in jail. (AR 29.) The ALJ found plaintiff's contention financial constraints affected her ability to receive treatment highly questionable given her health insurance and negligible co-pays. Plaintiff's benign treatment history and failure to comply with treatment recommendations strongly suggested the physical symptoms were not as debilitating as alleged. Likewise, the minimal mental health treatment received, including the discontinuation of Lamictal and absence of mental health therapy, suggested symptoms not as serious as alleged.

The ALJ further found plaintiff demonstrated a level of physical functioning during the period at issue grossly inconsistent with the claimed limitations. She made "numerous exaggerated statements" during the hearing as to her difficulty sustaining even basic activities of daily living due to pain. (*Id*.) She stated, for example, she required a break even after chopping vegetables, loading the dryer, or unloading the dishwasher, that pushing herself to go for a walk caused her to be bedridden the following day, and that she could walk only five-to-ten minutes at one time. The ALJ found nothing in the record to establish this level of debilitation, and the evidence to show plaintiff's ability to manage self-care, prepare meals for long periods, perform household chores

like dishes and laundry, shop independently, exercise at the YMCA, take long walks, and train for a half marathon. This evidence clearly showed plaintiff's ability to persist physically throughout the day with minimal limitations. The ALJ also found the record to show mental functioning inconsistent with alleged limitations. She contrasted alleged memory and concentration problems with evidence showing plaintiff was able to learn how to sell objects online and spend her time reading, and alleged difficulties being around large groups of people and loud noises with plaintiff's ability to attend church, exercise at the YMCA, and participate in a half marathon. (AR 29-30.)

The ALJ is responsible for assessing a claimant's symptom testimony and the medical evidence, and for resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). In this case, while portions of the ALJ's assessment withstand scrutiny, the ALJ erred in more than one respect.

The ALJ misconstrued the record to show plaintiff trained for a half marathon during the period at issue. (*See* AR 29, 30, 32.) The evidence reflects such training as late as March 28, 2014, two months prior to the June 1, 2014 alleged onset date. (AR 485-89.) At that time, plaintiff reported moderate pain, swelling, and stiffness to her ankles and feet for the past month, three months after she began training and following a change in shoe gear. (AR 485-86.) Dr. Eddie Lo

found pain on palpation, a small, palpable bone spur on the left foot, and joint swelling. (AR 488.)

At her next visit, on July 25, 2014, plaintiff reported sharp pain and swelling in her left foot, that she could not walk or exercise because of the pain, and wanted to consider surgery. (AR 490.) Dr. Lo made the same findings, worsened since the prior visit (AR 493), and plaintiff had surgery on her left foot in August 2014 (*see* AR 496). Five weeks after the surgery, plaintiff had been doing well, but her foot became swollen and painful after a long walk. (AR 502.)

In finding evidence of half marathon training during the relevant time period, the ALJ relied on later records from Dr. Lo, dated in May/June 2016, but containing some of the prior, 2014 records addressing the onset of plaintiff's foot pain. (AR 641-42.) The 2016 records reflect the return of the bone spur, painful and swollen on the left foot. (AR 636-39.) Also, plaintiff reported "wanting to work out and . . . swimming at the YMCA" in early February 2014, some four months prior to the alleged onset date (AR 330), while her long walk in September 2014 resulted in foot swelling and pain. (AR 502.) The ALJ did not reasonably rely on this evidence of exercise activity as showing a level of physical functioning grossly inconsistent with plaintiff's claimed physical functioning, or as inconsistent with her testimony of social limitations.

The ALJ also failed to adequately address evidence associated with plaintiff's treatment. Treatments or other methods used to alleviate symptoms serves as an important indicator of the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ properly considers an absence of treatment, the failure to seek or follow through with treatment, favorable response to conservative treatment, or other inconsistency between the frequency or extent of treatment and a claimant's subjective complaints. SSR 16-3p; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, before finding inconsistency on this basis,

the ALJ must consider possible reasons for a failure to comply with or seek treatment, such as an inability to afford treatment or side effects less tolerable than symptoms. SSR 16-3p; SSR 82-59; *Tommasetti*, 533 F.3d at 1039.

The ALJ here questioned evidence of alleged financial constraints given plaintiff's health insurance and negligible copays. (AR 29 (citing AR 345, 350, 354, and 271 ("Doctors have not helped and we can't afford a $20 co-pay, 3 times a week for treatment that does not help. Other doctors have turned me away."))  Excluding the possibility plaintiff's financial constraints stemmed from her deductible, this assessment appears rational. (*See* AR 343-44 (physical therapy discontinued following multiple no-shows and a cancelation at plaintiff's request due to "insurance/financial reasons") and AR 345-50 (authorizing twenty-five physical therapy appointments with no co-pays, but noting a $500.00 deductible).)  The ALJ's decision does not, however, reflect consideration of all reasons pertinent to absent treatment.

Plaintiff described her attempts at treating her fibromyalgia as unsuccessful, stating both acupuncture and the use of a TENS unit at physical therapy made things worse, and that she tried working with a chiropractor, but the attempts at adjustment either did not work or resulted in her being "pretty much out for two or three days literally." (AR 52.)  She refused to take more than over-the-counter medications for pain or as a sleep aid due to past experiences, including a suicide attempt she attributed to her use of Lyrica, and an incident in which she cooked a full meal in the middle of the night after taking Ambien. (AR 52-53, 58 (also describing incident in which, following several stressful situational factors and her inability to obtain a refill of her Paxil subscription, plaintiff began drinking, assaulted her husband, and spent more than a month in jail).)  While noting the incident involving Ambien (AR 27), the ALJ did not otherwise address any of the possible non-financial reasons in the record for plaintiff's failure to seek or comply with

recommended treatment. At the least, the ALJ should have addressed the evidence associated with alleged serious medication side-effects. (*See, e.g.*, AR 275 ("after Lyrica caused suicide attempt – refuse to take medication for fibro – too scared"); AR 518 (reported to Dr. Harrison that she "Once took Lyrica and tried to kill herself afterwards."); and AR 591 (reported to Dr. Hawkins: "Cymbalta 2013. Lead to suicide attempt.")) It further cannot be reasonably said the absence of medical treatment during plaintiff's incarceration provides a basis for discounting her symptom testimony.

Where an ALJ provides sufficient specific, clear, and convincing reasons for an assessment of a claimant's symptom testimony, an error in the analysis may be deemed harmless. *Carmickle*, 533 F.3d at 1162-63. *See also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless where it is "'inconsequential to the ultimate nondisability determination.'") In this case, the Court finds the ALJ's errors to substantially undermine the support for her conclusions. The ALJ also repeated the error regarding half marathon training several times in the decision. On remand, the ALJ should reassess plaintiff's symptom testimony with consideration of evidence of her physical activity within the relevant time period and pertinent reasons associated with absent or a failure to seek or follow through with treatment.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where the record contains contradictory opinions, as in this case, the opinion of a treating or examining physician can be rejected only with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Plaintiff here avers error in

the consideration of two physician opinions.

A.    Richard Hawkins

Treating provider Dr. Richard Hawkins saw plaintiff on six occasions between April 2015 and November 2015. (AR 590-635.)  A questionnaire signed by Dr. Hawkins on August 10, 2015 (AR 560-67) identifies clinical findings including diffuse tenderness, muscle spasms in low back and feet, muscle weakness in hands, arms, and low back, swelling in hands, joint instability, abnormal gait when her back goes out, abnormal posture "in pain," and fibromyalgia in all eighteen tender points.  (AR 560-61.)  The limitations assessed on the questionnaire include, in an eight-hour day, sitting up to one hour and standing/walking up to one hour, an inability to do either activity continuously and requiring standing up from sitting every ten minutes, for ten minute intervals; the ability to frequently lift up to five pounds and occasionally up to ten pounds, but inability to carry anything; the need to elevate both legs for three minutes above her head, all day depending on her pain; pain, fatigue or other symptoms frequently interfering with attention and concentration; an inability to tolerate even low work stress; the need for unscheduled breaks every five minutes, for ten minute intervals; more than three absences per month; and psychological limitations, the need to avoid extreme temperatures and noise, and no pushing, pulling, kneeling, bending, or stooping.  (AR 563-66.)  The form also reflects, *inter alia*, pain interfering with plaintiff's ability to ambulate effectively, that she cannot climb stairs without help of a handrail, cannot carry out activities of daily living independently without assistance, could prepare meals, but not every day, and can drive locally, but not on the freeway.  (AR 563.)

The ALJ acknowledged Dr. Hawkins' treating relationship with plaintiff, but found his opinion regarding the severity of her physical and mental health problems grossly inconsistent with the overall medical evidence of record.  (AR 31.)  He found the evidence to strongly suggest

plaintiff completed at least half or a portion of the questionnaire, which called into question the impartiality of Dr. Hawkins' opinion. (AR 31-32; *see also* AR 31, n.1 (stating this suspicion is further confirmed with a comparison to plaintiff's handwriting on her function report (citing AR 273-80).) The ALJ found the opinion regarding physical limitations completely inconsistent with Dr. Hawkins' treatment notes, which indicated he did not perform physical examinations and merely noted plaintiff's general appearance and interaction as unremarkable. (AR 32 (citing AR 592, 601, 607, 613, 618).) He also found inconsistency with plaintiff's unremarkable consultative medical examination, minimal medical treatment history, and failure to follow-through with treatment recommendations. Dr. Hawkins further acknowledged he based his opinion of plaintiff's mental health problems on "her reports." (*Id*. (citing AR 565).) "But the claimant's lack of mental health treatment, consultative psychological examination, and medical evidence showing that her mental health symptoms improved with Paxil completely contradicts the doctor's opinion." (*Id*.) Finally, plaintiff's daily activities, such as preparing meals for her family, performing household chores, shopping, spending time with friends, exercising at the gym, and training for a half marathon, showed a level of functioning inconsistent with Dr. Hawkins' opinion. The ALJ therefore gave the opinion little weight.

The ALJ drew a reasonable inference in finding plaintiff had completed portions of the questionnaire. The form contains two distinct handwriting styles, one of which matches multiple other documents in the record containing plaintiff's handwriting. (*See, e.g.*, AR 273-79, 558, 571.) It is not clear who completed the portions of the form assessing work-related limitations. Plaintiff, for example, appeared to write she needed to get up from a sitting position every "10 minutes" and could not stand/walk "too long causes extreme pain – fatigue", but there is no clear way to determine who circled or check-marked various answers on the form. (*See, e.g.*, AR 563.) It is,

ORDER
PAGE - 11

on the other hand, apparent that Dr. Hawkins wrote that he based his conclusions regarding emotional factors on plaintiff's reports. (AR 565.)

The ALJ also accurately noted the absence of physical examinations in five of Dr. Hawkins' six appointments with plaintiff. On those occasions, Dr. Hawkins took plaintiff's vital signs and stated: "General appearance and interaction unremarkable." (AR 592, 601, 607, 613, 618.) However, in the sixth and final appointment, he added: "Ambulatory. Low back pain L4-S1. Tenderness along the SI joint areas. Tenderness in the pubic area, and LLQ. MRI report reviewed with her." (AR 632.) He also included the following assessment: "MRI abnormalities – not much we can do about them, other than what we have been doing. Fibromyalgia. Painful. Left ovarian cyst. Episodic leg weakness." (AR 633.) The record also contains a letter from Dr. Hawkins dated April 11, 2016, stating: "[Plaintiff] has fibromyalgia and degenerative joint disease. I have no new treatment recommendations for her." (AR 571.) A written note from plaintiff on the letter states Dr. Hawkins read her MRI, said he could do nothing for her, and walked out, resulting in her need to find a new doctor.

The ALJ reasonably identified inconsistency between Dr. Hawkins' opinion and the medical record as a whole and with Dr. Hawkins' own treatment notes. *Tommasetti*, 533 F.3d at 1041; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). (*But see* AR 632-33 (examination findings included in November 2015 treatment notes).) The ALJ also reasonably considered the fact plaintiff completed a significant amount of the questionnaire, and that Dr. Hawkins noted his at least partial reliance on plaintiff's subjective reporting. However, Dr. Hawkins' reliance on plaintiff's reporting is only problematic to the extent plaintiff's reporting was properly discounted. *See, e.g.*, *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly

discounted as incredible.") (quoting *Morgan*, 169 F.3d at 602). The ALJ also repeated his misunderstanding regarding the evidence of plaintiff's activities. The ALJ's errors in the consideration of plaintiff's symptom testimony necessitate further consideration of the opinion evidence from Dr. Hawkins.

B.      Dr. Sorino Rhone

Dr. Sorino Rhone conducted a consultative medical examination in January 2015. (AR 553-54.) On examination, plaintiff had essentially normal ranges of motion, and normal gait, neurological findings, coordination, and negative Romberg, but tenderness at palpation of her gluteal muscles and paravertebrally in the lumbosacral area, spasm palpable on forward bend in lumbosacral area, and some Heberden nodes in hands consistent with osteoarthritis. (AR 554.) Dr. Rhone opined, based on objective findings, "physically she appears to be basically fit for sedentary-type work as she was doing before, although her former job required for her to do quite a bit of traveling and handling materials and lifting objects quite frequently heavier than 20 pounds." (*Id.*) Plaintiff therefore did not appear to be able to return to her former occupation and "ideally she should get involved in some type of sedentary work." (*Id.*) Dr. Rhone further opined plaintiff could, in an eight-hour period, sit and work with her hands including fine manipulation, could occasionally stand and walk, seldom climb, twist, bend, could not squat, kneel, crawl, and reach or work above shoulders, and could occasionally handle fifteen pounds, lift, carry, pull and push.

The ALJ noted Dr. Rhone's knowledge of the Social Security disability program and his ability to examine plaintiff, but found his opinion of physical functioning grossly inconsistent with the overall medical evidence of record. (AR 30.) The ALJ described Dr. Rhone's physical examination findings as completely unremarkable, the medical evidence as showing a benign,

minimal treatment history, and her ability to engage in activities of daily living, as well as train for a half marathon and go on long walks to indicate she functioned at a much higher level than reflected in the assessment. She accorded the opinion little weight.

As with the opinion of Dr. Hawkins, the ALJ reasonably found inconsistency between the opinion of Dr. Rhone and the medical evidence as a whole. However, because Dr. Rhone did identify some physical findings on examination, the ALJ overstated the examination findings from this physician as completely unremarkable. The ALJ also again repeated her error regarding the evidence of plaintiff's physical activities during the relevant time period. Dr. Rhone's opinion should be reconsidered on remand.

Steps Four and Five

Plaintiff argues the errors in the consideration of the medical opinions implicate the ALJ's determination she could perform her past relevant work as a receptionist. She further asserts that, when the ALJ posed a hypothetical to the VE matching the assessments of Drs. Hawkins and Rhone, the VE testified plaintiff would not be able to perform any of her prior work or any other work in the regional or national economy. (*See* AR 75.) Plaintiff argues this testimony provides clear evidentiary support for a finding of disability at step five and an award of benefits.

The ALJ's flawed assessment of plaintiff's symptom testimony and medical opinions implicate her conclusions at steps four and five. This matter is not, however, appropriately remanded for an award of benefits. *See generally Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'") (quoting *Treichler*, 775 F.3d at 1099), and *Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors

may be.")  It is not clear the record in this case has been fully developed, that further proceedings would serve no useful purpose, or that, if improperly discredited evidence were credited, the ALJ would be required to find plaintiff disabled on remand.  *See Brown-Hunter*, 806 F.3d at 495. Outstanding issues must be resolved before a disability determination can be made, including a reassessment of plaintiff's symptom testimony with consideration of all pertinent evidence, further consideration of the medical opinions of record, and a reevaluation of plaintiff's RFC and her ability to perform both her prior sedentary work and other work existing in significant numbers in the regional and national economies.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this <u>8th</u> day of January, 2019.

Mary Alice Theiler
United States Magistrate Judge